IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRE-ANA GARLAND, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action  JRR-21-947 |
| FIDELITY CAPITAL HOLDINGS, INC., d/b/a FIDELITY CREDITOR SERVICE, INC. | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the pending Motion for Judgment by Default (the "Motion") filed by plaintiff Bre-Ana Garland ("Plaintiff") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF 18. By Order of the Court entered on November 9, 2022, this matter was referred to the undersigned to review the Motion and make recommendations concerning damages. ECF 19. I have reviewed the relevant filings and conducted a hearing on the matter on February 24, 2023. For the reasons stated herein, the undersigned recommends that the Motion be denied without prejudice to refile with supplemental information within 30 days of the Court's adoption of this Report and Recommendation, should it be adopted.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On April 15, 2021, Plaintiff filed suit against defendants Fidelity Information Corp. and Datu Faison ("Faison"). ECF 1. Plaintiff alleged in Counts One and Two of the original Complaint that both defendants violated the Maryland Consumer Debt Collection Act, MD. CODE ANN., COM. LAW § 14- 201, *et seq.* (the "MCDCA"); and the Maryland Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-101, *et seq. Id.* In Counts Three and Four, Plaintiff alleged that defendant Fidelity Information Corp. violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the

"FCRA"); and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"). *Id.* Faison answered the original Complaint, ECF 3, but no answer was filed by defendant Fidelity Information Corp. Plaintiff filed an Amended Complaint on November 15, 2021, asserting the same claims stated in the original Complaint but naming as the first defendant Fidelity Capital Holdings, Inc. d/b/a Fidelity Creditor Service, Inc., with an address in Burbank, California ("FCH"), in place of Fidelity Information Corp. ECF 5 (Am. Compl.); ECF 5-1 (redline version).

In the Amended Complaint, Plaintiff alleges that, for several months in 2019, she rented a residence in Baltimore, Maryland (the "Property") that "had a number of health and safety problems" that went unaddressed by Faison, her landlord. Am. Compl. ¶¶ 7–10. After paying "out of her own pocket" to fix some of the issues, "Plaintiff attempted to file a rent escrow action, but when doing so discovered that she could not because the Property was not licensed as a rental property." *Id.* ¶¶ 10–11. Because the Property was not licensed as a rental, Plaintiff alleges, she was not required to pay rent, and she stopped paying rent "at the end of September of 2019[.]" *Id.* ¶¶ 12–13. Faison filed an action against Plaintiff for unpaid rent in the District Court of Maryland for Baltimore City, but a judge in that case eventually ruled against Faison. *Id.* ¶ 13. After Plaintiff moved out of the property at the end of November 2019, Faison "retained Plaintiff's security deposit [and] all paid rent, . . . continued seeking payment of allegedly unpaid rent[,]" and hired FCH "to collect the false debt from the Plaintiff." *Id.* ¶¶ 14–16. FCH "began reporting a delinquent collection account for the alleged debt" through credit reporting agencies. *Id.* ¶ 17. After discovering the alleged error on her credit report, in November 2020, Plaintiff sent a letter to the credit reporting agencies disputing the debt, which the agencies forwarded to FCH. *Id.* ¶¶ 18–20. FCH "failed to conduct a reasonable investigation" upon receipt of the dispute letter but "continues to report a false delinquent debt[,]" and the FCH trade line remains on Plaintiff's credit report,

which "continues to place Plaintiff's reputation in a false light[.]" *Id.* ¶ 21. After experiencing "the decline in her credit standing, . . . Plaintiff experienced bouts of emotional distress" and "refrained from applying for credit which she otherwise would have applied for but for the false Fidelity delinquency." *Id.* ¶¶ 22–23. Plaintiff seeks a judgment in her favor and an award of actual damages, punitive damages, and statutory damages. *Id.* at 9–10.

Summons issued to FCH and was served on November 23, 2021, and proof of service was filed on January 28, 2022. ECF 8. On the same date, Plaintiff filed a motion for entry of default as to FCH. ECF 9. FCH never filed an answer or asserted any defense in this matter. On January 31, 2022, the Clerk entered default for want of answer or other defense by FCH and issued a notice of default to FCH. ECF 10; ECF 11. The notice of default provided that FCH had 30 days to file a motion to vacate order of default and notified FCH that if timely action was not taken, the Court would "act promptly on any pending motions for entry of default judgment, which may result in a monetary judgment against [FCH]." *Id.* FCH did not make any appearance in this case or file any motion to vacate order of default within the time provided in the notice of default.

On October 21, 2022, Plaintiff filed a Motion for Judgment by Default against FCH (the "Motion") and request for a hearing on the Motion. ECF 18 (Mot.). In the Motion, Plaintiff states that the false debt Faison allegedly hired FCH to collect, which FCH subsequently reported to credit reporting agencies, amounted to $3,900. Mot. at 3. Plaintiff argues that FCH's conduct constituted violations of MCDCA, FCRA, and FDCPA, each of which provide a private cause of action for actual damages. *Id.* at 4–6. She further argues that she is entitled to statutory damages under the FDCPA and punitive damages under the FCRA. *Id.* at 7. As to her actual damages, Plaintiff states in the Motion that, after moving out of the Property, Plaintiff rented a new residence, but her new landlord later discovered FCH's false reporting on her credit report and

then refused to renew her lease. *Id.* Plaintiff and her three children then moved back in with her husband, from whom she separated in 2019, which caused Plaintiff "humiliation." *Id.* at 7–8. Plaintiff learned that her husband was violating his lease by having her and the children live with him, but she was unable to obtain approval for a new residence due to the false reporting on her credit report. *Id.* at 7. She and her children ended up moving into a two-bed hotel room, where Plaintiff has been living since April 2021. *Id.*

Plaintiff has attached to the Motion an undocketed letter dated February 4, 2022, from an apparent representative or principal of FCH addressed to Judge Richard D. Bennett, to whom this case was previously assigned. ECF 18-1. The letter confirms the company's awareness of this lawsuit and decision not to participate in the matter, explaining that it does not intend to participate in this litigation and understands that Plaintiff will seek default judgment. *Id.*

On November 9, 2022, Judge Julie R. Rubin entered an Order pursuant to 28 U.S.C. § 636 and Local Rule 301 referring this matter to the undersigned magistrate judge to review a default judgment "and/or mak[e] recommendations concerning damages." ECF 19. Plaintiff filed a stipulated dismissal of her claims against Faison with prejudice on November 23, 2022, which was granted. ECF 20; ECF 21.

Upon Plaintiff's request, the undersigned scheduled a hearing on the Motion for February 24, 2022. ECF 22. On February 22, 2022, two days before the scheduled hearing, Plaintiff filed a "Trial Memorandum Regarding Damages Under the Fair Credit Reporting Act" (the "Brief"). ECF 25 (Br.). In the Brief, Plaintiff focuses on FCH's liability for violating FCRA and Plaintiff's entitlement to actual damages and punitive damages under that statute, restating facts alleged in the Amended Complaint and the Motion. Plaintiff attaches to the Brief an undocketed letter dated November 29, 2022, from FCH addressed to Judge Rubin, stating that the instant matter is

"uncontested" as the company cannot afford to defend the action. ECF 25-1. Plaintiff also provides information regarding FCH's business that she contends supports her request for punitive damages. Br. at 9–13; *see also* ECF 25-2 (affidavit from counsel).

The undersigned conducted a hearing on February 24, 2022, where Plaintiff appeared and, through counsel, presented oral argument in support of the Motion and request for economic damages based upon Plaintiff's hotel stay and unspecified amounts of non-economic damages and punitive damages. Plaintiff was prepared to present evidence in support of her requests, but the undersigned declined to hear the evidence at this time for the reasons explained in Part III *infra*.

## II.   LEGAL STANDARD

A defendant's default must be entered when the defendant fails to plead or otherwise present a defense in a civil action "and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). If the plaintiff's claim against the defaulting defendant "is for a sum certain or a sum that can be made certain by computation," and the plaintiff requests a default judgment "with an affidavit showing the amount due[,]" the clerk must enter a default judgment for that amount due, provided the defendant is "neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). If the claim is not for a sum certain or ascertainable through computation, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). When a plaintiff requests a default judgment, the court may conduct a hearing when necessary to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.* The Fourth Circuit recognizes a "strong policy that cases be decided on the merits[.]" *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)). "However, default judgment is available when the 'adversary process has been halted because of

an essentially unresponsive party.'" *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (quoting *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005)).

Upon review of a motion for default judgment, the court accepts as true the well-pleaded allegations in the complaint but must determine whether those allegations "support the relief sought in this action." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). "If the court finds that liability is established, it must then turn to the determination of damages." *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (citing *Ryan*, 253 at 780–81.) "The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Id.* "An allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (quoting Fed. R. Civ. P. 8(b)(6). Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

### III.  DISCUSSION

#### A. Damages

The undersigned recommends that the Motion be denied because Plaintiff has failed to state and provide notice to FCH sufficient information regarding the amount she seeks in damages. The Court is not permitted to enter a default judgment that "differ[s] in kind from, or exceed[s] in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). As explained in *Federal Practice and Procedure*,

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to

> believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award. . . .  In sum, . . . a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded.

10 WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2663 (4th ed.) (footnote omitted).

Courts have come to varying conclusions about how Fed. R. Civ. P. 54(c) and its underlying rationale apply to a case where the pleadings do not specify an amount of damages. Without deciding the issue, the U.S. Court of Appeals for the Fourth Circuit has stated that "Fed. R. Civ. P. 54(c) and its many state analogues have led to a dizzying array of judicial decisions addressing the precise meaning of the requirement that a default judgment may not 'exceed in amount that prayed for in the demand for judgment.'" *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) (quoting Fed. R. Civ. P. 53(c)). In cases where "a complaint . . . demands unspecified amounts to be proven at trial, . . . courts have not followed a uniform approach. Some have reasoned that as long as the defendant receives notice that some damages may be awarded, general allegations of actual damages suffice to support a default judgment." *Id.* at 132–33; *see also, e.g.*, *Labuda v. SEF Stainless Steel, Inc.*, Civ. No. RDB-11-1078, 2012 WL 1899417, at *2 (D. Md. May 23, 2012) ("[A]s as long as the defendant receives notice that some damages may awarded, allegations and supporting affidavits regarding damages suffice to support a default judgment for money damages.").

In *Monge*, for instance, then-Magistrate Judge Paul W. Grimm concluded that a default judgment of $109,159.20 would not violate Rule 54(c) where the complaint "did not specify the total amount of damages" because the complaint "did not state a lesser amount" than awarded in the default judgment. 751 F. Supp. 2d at 797. Unlike the instant case, the plaintiff in *Monge* "included an affidavit and proposed order with her Motions for Default Judgment, and those

7

documents asserted the amount of damages as 'the sum of $109,159.20. . . .'" *Id.* Additionally, with her motions, the plaintiff provided information from which the amount of damages she claimed could be computed. "Therefore, in keeping with the purpose of Rule 54(c), Defendants had notice of the damages through the documents supporting Plaintiff's motion, and they had the opportunity to defend by opposing the motion." *Id.*; *see also Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 610–11 (7th Cir. 1980) (affirming default judgment and finding no violation of Rule 53(c) where a proposed default order was served upon defendant weeks in advance and "was definite enough to allow [defendant] to calculate its maximum liability" and "to weigh the advantages and disadvantages of defaulting, and [defendant] chose to default").

Here, in contrast, both the Amended Complaint and the Motion are silent as to the amount of Plaintiff's damages, and neither provides sufficient information from which FCH could determine or estimate the amount Plaintiff would ultimately request by default judgment. In the Amended Complaint, Plaintiff prays for an award of "statutory damages of up to $1,000 and actual damages" as well as punitive damages under the FCRA, without assigning any specific monetary value to her claim for actual damages or punitive damages. Am. Compl. at 9–10. The only information provided in the pleading that could inform FCH about the scope or amount of actual damages Plaintiff seeks in this matter are the following allegations:

1. FCH's trade line remained on Plaintiff's credit report after FCH received Plaintiff's dispute letter but failed to conduct a reasonable investigation, which "continues to place Plaintiff's reputation in a false light. . . ." *Id.* ¶ 21.

2. "After Plaintiff experienced the decline in her credit standing," she "experienced bouts of emotional distress that included anxiety, frustration, knots in her stomach, and loss of sleep." *Id.* ¶ 22.

> 3. "Since Plaintiff saw that her credit report had a false and inaccurate delinquency on it, she refrained from applying for credit which she otherwise would have applied for but for the false [FCH] delinquency." *Id.* ¶ 23.

The Amended Complaint does not limit Plaintiff's claim for actual damages to the above-described damage to her credit and emotional distress. Indeed, the Motion contains several unsworn statements describing, for the first time, "significant economic and noneconomic damages" resulting from FCH's violations, including the following:

> 1. After "perform[ing] a credit check and discover[ing] the false reporting from [FCH]," Plaintiff's landlord refused to renew her lease, and Plaintiff and her children "mov[ed] back in with her husband for a short time[.]" Mot. ¶ 32.
>
> 2. The false credit reporting prevented Plaintiff from obtaining approval for a new apartment, and she and her three children eventually moved into a hotel room with two beds, "where she has been living since that time (approximately April of 2021)" and has been "unable to cook [her children] a warm meal[.]" *Id.*
>
> 3. "Plaintiff had to suffer the humiliation of moving back in with her husband, ruining the separation period that she needs to seek a divorce, and is now living in a small hotel room, all to keep her children safe during the pandemic." *Id.*

In the Brief filed on February 22, 2023, Plaintiff restates the above facts regarding her actual damages. ECF 25 at 7–8. In support of her request for punitive damages, she includes information regarding the volume of consumer credit dispute notices that FCH has received over the past several years and a Paycheck Protection Program loan FCH received in 2020. *Id.* at 11–12. Neither the Motion nor the Brief provide any affidavit or documentary evidence addressing Plaintiff's claims for actual damages.

The undersigned finds that the above-described filings, which have been served upon FCH according to Plaintiff's counsel, provide inadequate information regarding the amount of damages Plaintiff would ultimately request in this case. It was not until the hearing on February 24, 2023, upon questioning by the undersigned, that Plaintiff's counsel addressed the amount of damages Plaintiff seeks in a default judgment. Counsel stated that Plaintiff's actual economic damages amount to more than $26,000 and that she would also request at least $50,000 for non-economic damages. Counsel did not specify an amount Plaintiff seeks for punitive damages. What information counsel proffered at the hearing had not been provided to FCH in advance of the hearing. Without this information, FCH could not calculate, or even estimate, the amount of damages that may be awarded against it in a default judgment, which would have enabled it to make an educated decision about whether to expend the resources necessary to oppose the Motion. At the hearing, Plaintiff's counsel stated correctly by all indications that FCH has made a "calculated decision" not to appear and participate in this litigation.[1] However, I find that, in making any such decision, FCH has been afforded substantially incomplete information about the quantum or scope of damages Plaintiff would ultimately seek against it in a default judgment.

For the foregoing reasons, the undersigned recommends that the Court deny the Motion without prejudice to the filing of a new motion for default judgment based upon a stated claim for damages in specific amounts or with sufficient information to permit computation or a reasonable estimate of these amounts. This claim may be stated in the motion itself or in an amended pleading. I recommend that Plaintiff be afforded 30 days to file and serve upon FCH either a new motion for default judgment or an amended pleading consistent with this Report and Recommendation.

---

[1] In support of her request for punitive damages, Plaintiff asks the Court to consider letters from FCH addressed to Judge Bennett and Judge Rubin. *See* ECF 18-1; ECF 25-1. The letters state that the company cannot afford to defend this suit and reflect the view that Plaintiff's actual damages and attorneys' fees are minimal.

### B. Military Affidavit

Pursuant to the Servicemembers' Civil Relief Act ("SCRA"), before a court may enter a default judgment in favor of a plaintiff, the plaintiff must "file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit[.]" 50 U.S.C. § 3931(b)(1)(A). "[I]f the plaintiff is unable to determine whether or not the defendant is in military service," the affidavit must state this fact. *Id.* § 3931(b)(1)(B). Plaintiff states in the Motion that FCH "is not in military service on behalf of the United States." Mot. at 2. This unsworn statement fails to satisfy the affidavit requirement of the SCRA. The undersigned recommends that Plaintiff be directed to file an affidavit stating whether the defendant is in military service if Plaintiff intends to file a new motion for default judgment.

## IV. CONCLUSION

In sum, the undersigned recommends the following:

1. Deny the Motion without prejudice to permit Plaintiff to file an amended pleading or a new motion for default judgment within 30 days of the Court's adoption of this Report and Recommendation; and

2. Direct Plaintiff to file the affidavit required by 50 U.S.C. § 3931(b)(1) if Plaintiff intends to file a new motion for default judgment.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and L.R. 301.5(b).

Date: March 6, 2023.

/S/
Matthew J. Maddox
United States Magistrate Judge