## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRE-ANA GARLAND, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action  JRR-21-947 |
| FIDELITY CAPITAL HOLDINGS, INC., | * | |
| d/b/a FIDELITY CREDITOR SERVICE, INC. | | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \*

### REPORT AND RECOMMENDATION

This Report and Recommendation addresses the pending Renewed Motion for Judgment by Default (the "Renewed Motion") filed by plaintiff Bre-Ana Garland ("Plaintiff") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF 30. By Order of the Court entered on May 17, 2023, this matter was referred to the undersigned magistrate judge to review the Renewed Motion and make recommendations concerning damages. ECF 33. I have reviewed the relevant filings and conducted a hearing on the matter on June 8, 2023. For the reasons stated herein, the undersigned recommends that the Renewed Motion be granted, that default judgment be entered against defendant Fidelity Capital Holdings, Inc. d/b/a Fidelity Creditor Service, Inc. ("FCH"), and that Plaintiff be awarded $112,941.79 in compensatory damages. The undersigned recommends that Plaintiff's request for punitive damages be denied.

## I.   FACTUAL BACKGROUND[1]

For several months in 2019, Plaintiff rented a residence in Baltimore, Maryland (the

---

[1] This summary of facts is derived from the First Amended Complaint, evidence attached to filings made by Plaintiff in this matter, and Plaintiff's testimony and other evidence presented at the hearing on June 8, 2023. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

"Property") that "had a number of health and safety problems" which were not addressed by her landlord, Datu Faison ("Faison"). Am. Compl. ¶¶ 7–10 (ECF 5). After paying "out of her own pocket" to fix some of the issues, "Plaintiff attempted to file a rent escrow action, but when doing so discovered that she could not because the Property was not licensed as a rental property." *Id.* ¶¶ 10–11. Because the Property was not licensed as a rental, Plaintiff stopped paying rent "at the end of September of 2019[.]" *Id.* ¶¶ 12–13. Faison filed an action against Plaintiff for unpaid rent in the District Court of Maryland for Baltimore City, but a judge in that case eventually ruled against Faison. *Id.* ¶ 13.

After Plaintiff moved out of the Property at the end of November 2019, Faison "retained Plaintiff's security deposit [and] all paid rent, . . . continued seeking payment of allegedly unpaid rent[,]" and hired Fidelity Creditor Service, Inc. ("FCH") "to collect the false debt from the Plaintiff." *Id.* ¶¶ 14–16. FCH "began reporting a delinquent collection account for the alleged debt" through credit reporting agencies ("CRAs"). *Id.* ¶ 17. After discovering the error on her credit report, in November 2020, Plaintiff sent a letter to the CRAs disputing the debt, which the agencies forwarded to FCH. *Id.* ¶¶ 18–20. FCH "failed to conduct a reasonable investigation" upon receipt of the dispute letter and "continue[d] to report a false delinquent debt." *Id.* ¶ 21. Plaintiff testified at the hearing on June 8, 2023, that FCH never contacted her after she submitted her dispute letters and that FCH trade line remained on her credit report until June 2022.

The false information furnished by FCH was discovered on Plaintiff's credit report after she moved out of the Property and entered a one-year lease for a separate residence. Pl. Aff. ¶ 4 (ECF 30-2). Plaintiff's then-landlord conducted a credit check upon the expiration of the lease and declined to renew her lease due to the false derogatory information reported by FCH. *Id.* The false derogatory information also prevented Plaintiff's applications to rent other residences from being

approved. *Id.* ¶ 5. As a result, Plaintiff and her three children had to move in with her husband, from whom Plaintiff had previously separated. *Id.* Plaintiff and her husband later discovered it was a violation of the husband's lease for Plaintiff and her children to live in the residence, and the family was forced to move out. *Id.* ¶ 6. Despite having received Plaintiff's dispute letters several months prior, FCH continued to report the false debt for unpaid rent to CRAs without conducting a reasonable investigation of the dispute, and Plaintiff's rental applications for other properties continued to be rejected. *Id.* ¶ 6, Exh. A; Am. Compl. ¶¶ 21–22.

In April 2021, Plaintiff was left with no option but to move with her three children into a hotel room, where the family has remained since that date. Pl. Aff. ¶ 7. Plaintiff and her three children (ages 12, 11, and 4) share the single room with two double-sized beds. The hotel room costs Plaintiff between $57.73 and $71.31 to rent per night, *id.*, Exh. B, totaling more than the monthly rent of $1,525.00 Plaintiff had paid for her last rental property, according to her testimony. The higher cost of the hotel room has impacted Plaintiff's ability to save up for a security deposit for a new rental property. *Id.* ¶ 8. Living in a hotel room has also disrupted Plaintiff's ability to work, to register her children to attend school in person, and to prepare meals for the family, and has caused Plaintiff feelings of anger, resentment, anxiety, frustration, inadequacy, stress, and guilt. *Id.*[2]

## II.    PROCEDURAL BACKGROUND

On April 15, 2021, Plaintiff filed suit against defendants Fidelity Information Corp. and Faison. ECF 1. Plaintiff alleged in Counts One and Two of the original Complaint that both defendants violated the Maryland Consumer Debt Collection Act, MD. CODE ANN., COM. LAW § 14- 201, *et seq.* (the "MCDCA"); and the Maryland Consumer Protection Act, MD. CODE ANN.,

---

[2] A more detailed summary of Plaintiff's damages is provided in Part IV.B *infra*.

COM. LAW § 13-101, *et seq.* (the "MCPA"). *Id.* at 5–7. In Counts Three and Four, Plaintiff alleged

that defendant Fidelity Information Corp. violated the Fair Credit Reporting Act, 15 U.S.C. § 1681,

*et seq.* (the "FCRA"); and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the

"FDCPA"). *Id.* at 7–9. Faison answered the original Complaint, ECF 3, but no answer was filed

by defendant Fidelity Information Corp. Plaintiff filed an Amended Complaint on November 15,

2021, asserting the same claims stated in the original Complaint but naming as the first defendant

Fidelity Capital Holdings, Inc. d/b/a Fidelity Creditor Service, Inc. ("FCH"), in place of Fidelity

Information Corp. ECF 5 (Am. Compl.); ECF 5-1 (redline version).

Summons issued to FCH and was served on November 23, 2021, and proof of service was

filed on January 28, 2022. ECF 8. On the same date, Plaintiff filed a motion for entry of default as

to FCH. ECF 9. FCH never filed an answer or asserted any defense in this matter. On January 31,

2022, the Clerk entered default for want of answer or other defense by FCH and issued a notice of

default to FCH. ECF 10; ECF 11. The notice of default provided that FCH had 30 days to file a

motion to vacate order of default and notified FCH that if timely action was not taken, the Court

would "act promptly on any pending motions for entry of default judgment, which may result in a

monetary judgment against [FCH]." *Id.* FCH did not make any appearance in this case or file any

motion to vacate order of default within the time provided in the notice of default.

On October 21, 2022, Plaintiff filed a Motion for Judgment by Default against FCH (the

"Motion") and request for a hearing on the Motion. ECF 18. On November 9, 2022, Judge Julie

R. Rubin entered an Order pursuant to 28 U.S.C. § 636 and Local Rule 301 referring this matter

to the undersigned magistrate judge to review a default judgment "and/or mak[e] recommendations

concerning damages." ECF 19. Plaintiff filed a stipulated dismissal of her claims against Faison

with prejudice on November 23, 2022, which was granted. ECF 20; ECF 21. The undersigned

scheduled a hearing on the Motion for February 24, 2022. ECF 22. On February 22, 2022, two days before the scheduled hearing, Plaintiff filed a "Trial Memorandum Regarding Damages Under the Fair Credit Reporting Act." ECF 25.

The undersigned conducted a hearing on February 24, 2022, and later entered a Report and Recommendation. ECF 27. In the Report and Recommendation, the undersigned found that Plaintiff's filings were not adequate to inform FCH of the amount of damages Plaintiff would ultimately seek in this case. *Id.* at 10. The undersigned recommended that the Motion be denied without prejudice to Plaintiff filing a new pleading or renewed motion that stated a claim for damages "in specific amounts or with sufficient information to permit computation or a reasonable estimate of these amounts." *Id.* Additionally, the undersigned recommended that, if Plaintiff filed a renewed motion for default judgment, she be directed to file an affidavit stating whether the defendant is in military service pursuant to 50 U.S.C. § 3931(b)(1). *Id.* at 11. Judge Rubin adopted the Report and Recommendation on April 10, 2023. ECF 29.

On May 10, 2023, Plaintiff filed a Renewed Motion for Judgment by Default against FCH (the "Renewed Motion"), which Judge Rubin referred to the undersigned for review and for a recommendation regarding damages. ECF 30; ECF 33. In the Renewed Motion, Plaintiff argues that FCH's conduct as alleged in the Amended Complaint constituted violations of the MCDCA, MCPA, FCRA, and FDCPA, each of which provide a private cause of action for actual damages, and that she is also entitled to punitive damages under the FCRA. The Renewed Motion attaches several documents: (1) an affidavit of Plaintiff stating that FCH is not in military service (ECF 30-1); (2) a second affidavit of Plaintiff detailing her injuries and losses and requesting $25,000.00 in economic damages, $100,000.00 in non-economic damages, and $200,000.00 in punitive damages, with supporting documentation (ECF 30-2); (3) a declaration of the general manager of

Online Data Exchange LLC ("OLDE"), in support of Plaintiff's claim for punitive damages (ECF 30-3); and (4) a declaration of Plaintiff's counsel providing information regarding a Paycheck Protection Program loan by FCH, also in support of Plaintiff's claim for punitive damages (ECF 30-4). The undersigned conducted a hearing on the Renewed Motion on June 8, 2023. Thereafter, Plaintiff made a supplemental filing in support of her requests for damages on June 14, 2023, including Plaintiff's credit report as of January 2021 and a recording of the court proceeding during which Faison's claim against Plaintiff for unpaid rent was dismissed. ECF 37; ECF 38.

At the hearing on June 8, 2023, and in previous filings, Plaintiff cited various letters sent to the Court by a principal of FCH. These letters generally confirm FCH's awareness of this lawsuit and decision not to participate in the matter, explaining that it does not intend to participate in this litigation and understands that Plaintiff will seek default judgment. *See* ECF 18-1; ECF 25-1.

## III.    LEGAL STANDARD

A defendant's default must be entered when the defendant fails to plead or otherwise present a defense in a civil action "and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). If the plaintiff's claim against the defaulting defendant "is for a sum certain or a sum that can be made certain by computation," and the plaintiff requests a default judgment "with an affidavit showing the amount due[,]" the clerk must enter a default judgment for that amount due, provided the defendant is "neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). If the claim is not for a sum certain or ascertainable through computation, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). When a plaintiff requests a default judgment, the court may conduct a hearing when necessary to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.* The Fourth Circuit recognizes a "strong policy that cases be

decided on the merits[.]" *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)). "However, default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (quoting *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005)).

Upon review of a motion for default judgment, the court accepts as true the well-pleaded allegations in the complaint but must determine whether those allegations "support the relief sought in this action." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). "If the court finds that liability is established, it must then turn to the determination of damages." *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (citing *Ryan*, 253 at 780–81.) "The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Id.* "An allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (quoting Fed. R. Civ. P. 8(b)(6). Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

IV.   **DISCUSSION**

   **A.  Liability**

In the Amended Complaint, Plaintiff asserts claims against FCH for violations of the MCDCA, MCPA, FCRA, and FDCPA.

   **1.  MCDCA and MCPA**

The MCDCA and MCPA are described by Maryland courts as "remedial consumer

protection statutes, the overarching purpose and intent of which is to protect the public from unfair or deceptive trade practices by creditors engaged in debt collection activities." *Chavis v. Blibaum & Assocs., P.A.*, 476 Md. 534, 5552–53 (2021), *reconsideration denied*, (Sept. 28, 2021) (quoting *Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 467 Md. 126, 132 (2020)) (cleaned up). The MCDCA provides in part that a debt collector, "[i]n collecting or attempting to collect an alleged debt[,] . . . may not: . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]" MD. CODE ANN., COM. LAW § 14-202(8). "To prove a claim under this provision of the MCDCA, a complainant must establish two elements: (1) the debt collector 'did not possess the right to collect the amount of debt sought'; and (2) the debt collector 'attempted to collect the debt knowing that [it] lacked the right to do so.'" *Chavis*, 476 Md. At 553 (quoting *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 677 (2018)). The MCDCA also prohibits a debt collector from "[e]ngag[ing] in any conduct that violates §§ 804 through 812 of the [FDCPA]" when attempting to collect a debt. MD. CODE ANN., COM. LAW § 14-202(8),(11). A debt collector who violates the foregoing provisions "is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." *Id.* § 14-203. The MCPA prohibits "unfair, abusive, or deceptive trade practice[s] . . . in . . . [t]he collection of consumer debts[,]" *id.* § 13-303(5), and "any person may bring an action to recover for injury or loss sustained by him as the result of [such practices,]" *id.* § 13-408(a). "A violation of the MCDCA . . . constitutes a *per se* violation of the MCPA as an 'unfair, abusive, or deceptive trade practice.'" *Chavis*, 476 Md. At 553 (quoting Md. Code Ann., Com. Law § 13-301); *see also Smith v. Westminster Mgmt., LLC*, 257 Md. App. 336, 382–83, 393–94 (2023) (liability for violating both MCDCA and MCPA established by defendant collecting money it had no legal right to collect).

The undersigned finds that factual allegations in the Amended Complaint support Plaintiff's claim for damages under the MCDCA and MCPA. According to the Amended Complaint, Plaintiff did not owe the amount of unpaid rent claimed by Faison and FCH, and therefore FCH had no right to collect this amount. Furthermore, FCH was notified that it lacked the right to collect the alleged debt when it received Plaintiff's dispute letters but continued to report the debt to CRAs. Uncontested by FCH, the Amended Complaint establishes FCH's liability under the MCDCA and MCPA.

### 2.  FCRA

The FRCA was enacted "to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 52 (2007). The statute "establishes 'a series of requirements for handling consumer credit information' and requires investigation when a consumer believes that there is incorrect 'information relating to [her] credit.'" *Peck v. U.S. Dep't of Labor, Admin. Rev. Bd.*, 996 F.3d 224, 232 (4th Cir. 2021), *as amended* (June 21, 2021), *cert. denied sub nom. Peck v. Dep't of Lab.*, 211 L. Ed. 2d 607, 142 S. Ct. 902 (2022) (quoting *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 802 (4th Cir. 2019)). Specifically, when a consumer notifies a CRA of a dispute concerning her credit, the CRA is required promptly to give notice of the dispute to the person who furnished the disputed information, as well as with "all relevant information regarding the dispute" provided by the consumer. 15 U.S.C. § 1681i(a)(2). When the furnisher receives notice of the dispute, it must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) . . . ; [and]
>
> (C) report the results of the investigation to the [CRA.]

15 U.S.C. § 1681s-2(b)(1). If the investigation reveals "the information is incomplete or

inaccurate," the furnisher must "report those results to all other [CRAs] to which [it] furnished the information and that compile and maintain files on consumers on a nationwide basis[.]" *Id.* § 1681s-2(b)(1)(D). "[F]or purposes of reporting to a [CRA,]" the furnisher is required to modify, delete, or "permanently block the reporting of" any item of information "found to be inaccurate or incomplete or [that] cannot be verified. . . ." *Id.* § 1681s-2(b)(1)(E). The furnisher is generally required to complete its investigations and reports within 30 days of receiving the notice of dispute. *Id.* § 1681s-2(b)(2) (citing 15 U.S.C. § 1681i(a)(1)).

The FCRA gives injured consumers a private right of action "to recover 'any actual damages' caused by negligent violations and both actual and punitive damages for willful noncompliance." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009) (citing 15 U.S.C. §§ 1681n & 1681o). "Actual damages may include economic damages, as well as damages for humiliation and mental distress." *Id.* (citing *Sloane v. Equifax Info. Servs.,* 510 F.3d 495, 500 (4th Cir. 2007)). Alternatively to "actual damages[,]" a consumer injured by willful noncompliance may recover statutory damages "of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A). "To bring a claim under § 1681s-2(b), 'a plaintiff must establish three elements: (1) that he or she notified the [CRA] of the disputed information, (2) that the [CRA] notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Best v. Fed. Nat'l Mortg. Ass'n*, 450 F. Supp. 3d 606, 638 (D. Md. 2020) (quoting *Alston v. Cavalry Portfolio Servs., LLC*, No. 8:12-CV-03589-AW, 2013 WL 665036, at *4 (D. Md. Feb. 22, 2013)). The third element is satisfied when, "after receiving notice of a consumer dispute from a credit reporting agency," the furnisher fails "to conduct a reasonable investigation of their records to determine whether the disputed information can be verified. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *see also Letren v.*

10

*Wells Fargo Bank, N.A.*, Civ. No. PWG-15-614, 2016 WL 560801, at *3 (D. Md. Feb. 12, 2016) ("[A]n unreasonable investigation . . . is tantamount to a failure to investigate.") (citing *Johnson*, 357 F.3d at 431, and *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 510 (D. Md. 2004)).

The undersigned finds that factual allegations in the Amended Complaint support Plaintiff's claim for damages under the FCRA. In November 2020, Plaintiff notified CRAs of her dispute concerning the debt arising from her unpaid rent, which FCH had reported. According to the Amended Complaint, the CRAs forwarded Plaintiff's dispute letters to FCH, and FCH failed to conduct a reasonable investigation of the matter and continued to report the debt to the CRAs. Uncontested by FCH, the Amended Complaint establishes FCH's liability under the FCRA.

### 3. FDCPA

"The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996)). The statute prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" including "[t]he false representation of . . . the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A). A "debt collector" is generally defined as a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

"To succeed on a FDCPA claim, a plaintiff must demonstrate that '(1) [she] has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Long v. Pendrick Cap. Partners II, LLC*, 374 F. Supp. 3d 515, 531 (D. Md. 2019) (quoting *Stewart*, 859 F.Supp.2d at 759–60). The FDCPA "is a strict liability statute and a consumer only has to prove one violation to trigger liability." *Id.* (quoting *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F.Supp.2d 492, 500 (D. Md. 2004)). A debt collector who fails to comply with the FDCPA "with respect to any person is liable to such person in an amount equal to the sum of . . . any actual damage sustained by such person as a result of such failure[]" and "such additional damages as the court may allow, but not exceeding $1,000[.]" 15 U.S.C. § 1692k(a)(1),(2)(A).

The undersigned finds that factual allegations in the Amended Complaint support Plaintiff's claim for damages under the FDCPA. According to the Amended Complaint, Faison hired FCH to collect from Plaintiff an amount of unpaid rent that Plaintiff did not owe Faison, and, even after becoming aware that Plaintiff did not owe the debt, FCH falsely represented "the character, amount, or legal status" of the debt to CRAs, in violation of the FDCPA. 15 U.S.C. § 1692e(2)(A). Uncontested by FCH, the Amended Complaint establishes FCH's liability under the FDCPA.

### B. Damages

Plaintiff requests an award of $25,000.00 in economic damages, $100,000.00 in non-economic compensatory damages, and $200,000.00 in punitive damages. For reasons explained below, the undersigned recommends reducing the amount awarded for economic damages to $12,941.79, granting the request of $100,000.00 for non-economic damages, and denying the request for punitive damages.

1.  **Actual Damages**

As explained in Part IV.A *supra*, Plaintiff is entitled to recover the sum actual damages caused by FCH's noncompliance with the FCRA and FDCPA. FCH is also liable for injuries or losses proximately caused by its violations of MCDCA and MCPA. Actual damages under the MCDCA and FCRA includes emotional distress. *See* MD. CODE ANN., COM. LAW § 14-203; *Robinson*, 560 F.3d at 239.

The undersigned finds that FCH's failure to conduct a reasonable investigation of Plaintiff's alleged debt to Faison and failure to correct its reporting of this debt to CRAs has interfered with Plaintiff's ability to rent a residential property for herself and her three children since April 2021. The landlord who owned the last property Plaintiff leased in 2020 refused to renew the lease due to FCH's reporting of the debt then claimed by Faison. When Plaintiff applied for other rental properties in or around November 2020, the applications were rejected due to the false reporting of this debt. During the same period, Plaintiff sent letters to CRAs disputing the debt reported by FCH, and these dispute letters were forwarded to FCH. Plaintiff again applied to rent other properties in April 2021 but was rejected due to FCH's continued false reporting of the debt Plaintiff had disputed several months prior. By this time, FCH had been notified of the dispute and was obligated by the FCRA to conduct a prompt investigation but failed to do so. *See* 15 U.S.C. § 1681s-2(b). This failure by FCH and its continued reporting of the false debt prevented Plaintiff from obtaining a new rental property and left Plaintiff with no option but to rent a hotel room for her family in April 2021.[3]

---

[3] The undersigned notes that, as of January 2021, Plaintiff's credit report reflected two relatively small delinquent accounts, totaling $519.00, apart from the false debt reported by FCH, which listed a balance of $3,900.00. ECF 38. Given the significantly greater size of the false debt reported by FCH, the undersigned finds that it was at least a substantial factor in preventing Plaintiff from obtaining a rental property in April 2021, making FCH liable under the FCRA. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 968 (3d Cir. 1996), *abrogated on other grounds by Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d

Plaintiff has presented evidence of economic and non-economic damages she sustained in connection with having to live a hotel room with her three children since April 2021. Plaintiff testified at the hearing on June 8, 2023, that she had paid monthly rent of $1,525.00 for the property she lost in late 2020 or early 2021.[4] She has provided a hotel invoice reflecting charges for her stay at the Ramada Inn hotel between December 6, 2022, and January 2, 2023, which range from $57.73 to $71.31 per night. Plaintiff testified that she was charged $525.00 per week for the first six months of her stay at the Ramada Inn and $444.69 per week thereafter, which total $54,116.79 from April 2021 through June 2023. If Plaintiff had paid monthly rent of $1,525.00 for the residential property she lost, she would have paid a total of $41,175.00 for the same period and saved $12,941.79. Therefore, the undersigned finds that Plaintiff has sustained economic damages in the amount of $12,941.79. Plaintiff's request for $25,000.00 in economic damages is not supported by the evidentiary record.

As to non-economic damages, Plaintiff testified and presented video evidence regarding the disruptive impacts that her failure to obtain a stable residence and moving into a hotel room had on her life and emotional well-being. Moving from a residential property with multiple bedrooms to sharing a single hotel room and two double-sized beds with three children have caused

Cir. 2010) (finding error in district court's assumption that FCRA plaintiff "could satisfy his burden only by introducing direct evidence that consideration of the inaccurate entry was crucial to the decision to deny credit[,]" and holding that a *prima facie* case under 15 U.S.C. § 1681s-2(b) could be founded on "evidence from which a reasonable trier of fact could infer that the inaccurate entry was a 'substantial factor' that brought about the denial of credit[]") (quoting RESTATEMENT (SECOND) OF TORTS § 431(a); Keeton *et al.,* PROSSER AND KEETON ON TORTS § 41, at 266–68 (5th ed. 1984)).

[4] Plaintiff testified that she had to move from this property in January or February 2020, but that testimony appears to be mistaken. Previously, Plaintiff had testified that she first moved into this property in November 2019, after moving out of the Property owned by Faison. According to her affidavit, Plaintiff rented the new property for a year that "went well" before the new landlord "performed a credit check and discovered the false reporting from [FCH]" and then "refused to renew the lease." Pl. Aff. ¶ 4. Plaintiff also testified that this credit check was performed during the height of the COVID-19 pandemic, which did not occur until after March 2020.

Plaintiff significant mental anguish, including feelings of anger, resentment, frustration, inadequacy, stress, and guilt. Plaintiff provided a video recording of the hotel room that corroborated Plaintiff's description of the room and revealed potential health and safety hazards, including a hole in the ceiling. Additionally, Plaintiff testified that she had suffered a respiratory condition due to poor air quality in the hotel room and a skin condition due to inadequate cleaning of bedsheets by hotel staff. Plaintiff has not felt at liberty to complain about conditions in the room for fear of being ejected from the hotel. In the hotel room, Plaintiff has not been able to prepare proper meals for her children with any consistency given a lack of kitchen appliances and space to store food. Plaintiff expressed worry that the hotel is not secure and that two of her children—a 12-year-old girl and an 11-year-old boy—lack adequate privacy in the hotel room. The lack of a permanent residential address has prevented Plaintiff from registering her children to attend public school in person. Additionally, Plaintiff lost her job after moving into the hotel due to her lack of access to a sufficient Internet connection, contributing to her emotional distress and feelings of shame and insecurity.[5] Additionally, the greater expense of renting a hotel room has limited Plaintiff's ability to save enough money to pay a security deposit once she is approved to rent a residential property.

Plaintiff requests an award of $100,000.00 in non-economic damages. In consideration of the foregoing evidence, the undersigned recommends a finding that $100,000.00 is adequate and necessary to compensate Plaintiff for the mental anguish and distress suffered by Plaintiff over the past two years as a consequence of FCH's violations.

For the foregoing reasons, the undersigned recommends an award of $12,941.79 in economic damages and $100,000.00 in non-economic damages, totaling $112,941.79 in actual or

---

[5] Plaintiff's claim for damages does not include lost wages.

compensatory damages.

## 2. Punitive Damages

The court may award punitive damages for willful violations of the FCRA. *See* 15 U.S.C. § 1681n(a)(2); *Robinson*, 560 F.3d at 239. "[A] willful violation of FCRA occurs when 'the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer[,]'" *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008) (quoting *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001)) (cleaned up), or "in reckless disregard of [the defendant's] obligations under FCRA[,]" *id.* at 151 n.4 (citing *Safeco*, 551 U.S. at 57–58). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. "[P]unitive damages awarded under section 1681n are within the discretion of the court and malice or evil motive need not be found for such an award, but the violation must be willful." *Yohay v. City of Alexandria Emps. Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987) (quoting *Thornton v. Equifax, Inc.*, 619 F.2d 700, 705 (8th Cir.), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980)). "There is no prohibition in the Federal Rules of an award of punitive damages in a default judgment, provided that they are sought in a plaintiff's complaint." *Recycling Sols., Inc. v. Orrs' Env't, LLC*, Civ. No. PWG-14-1062, 2015 WL 3948981, at *9 (D. Md. June 26, 2015) (citing *Murphy v. Islamic Rep. of Iran,* 740 F.Supp.2d 51, 83 (D.D.C. 2010)).

"Unlike compensatory damages, which compensate a plaintiff for harm suffered, punitive damages serve the dual purposes of deterrence and retribution." *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 258 (4th Cir. 2017) (citing *Cooper Indus., Inc. v. Leatherman*

*Tool Grp., Inc.*, 532 U.S. 424, 432 (2001)); *see also Saunders*, 526 F.3d at 152 ("[P]unitive damages can be imposed to further 'legitimate interests in punishing unlawful conduct and deterring its repetition.'") (quoting *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568 (1996)). Although "Congress specifically chose not to limit punitive damages in suits brought by private parties[]" under the FCRA, "[t]he Due Process Clause . . . 'prohibits the imposition of grossly excessive or arbitrary punishments[,]'" *Saunders*, 526 F.3d at 152 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003)).

The undersigned does not find that FCH's violation of the FCRA was willful. Plaintiff has not presented sufficient evidence that FCH acted in either conscious or reckless disregard of its obligations under the FCRA in failing to investigate Plaintiff's dispute and continuing to report a debt she did not owe.

Plaintiff cites *Alston v. Branch Banking & Tr. Co.*, Civ. No. GJH-15-3100, 2016 WL 4521651, at *7 (D. Md. Aug. 26, 2016), for the proposition that a claim for a "willful violation" of the FCRA "can be based on an unreasonable investigation, which is tantamount to a failure to investigate." ECF 30 at 5–6. This is a correct statement of the law in the Fourth Circuit, *see Johnson*, 357 F.3d 426, 431, but does not go so far as to suggest that a willful violation claim requires *only* "an unreasonable investigation" or "a failure to investigate." If that were the case, then virtually every violation of 15 U.S.C. § 1681s-2(b)'s investigation requirement would constitute a willful violation and justify an award of punitive damages. There is nothing in *Alston* or *Johnson* that removes an FCRA plaintiff's obligation to show a conscious or reckless disregard of the FCRA's requirements in order to establish a willful (as opposed to merely negligent) FCRA violation and claim punitive damages.

In support of her claim for punitive damages, Plaintiff offers invoices obtained from OLDE reflecting that a large volume of dispute notices submitted in response to information FCH furnished to CRAs. Plaintiff argues that these records reflect a serial failure on FCH's part to comply with its obligations under the FCRA. The undersigned cannot infer from the number of disputes listed among OLDE's records that FCH failed to comply with the FCRA in response to any of the disputes, apart from Plaintiff's dispute. No reliable information is provided to suggest that FCH failed to investigate any of the disputes or failed to modify the information it furnished to CRAs after conducting its investigations.[6]

Additionally, Plaintiff provides a sworn declaration of OLDE's general manager stating that OLDE offered training in the use of its e-OSCAR platform to data furnishers like FCH and OLDE has no record that FCH ever registered for such training. However, Plaintiff does not cite any legal obligation on FCH to take any such training and offers no evidence to suggest that the failure to take such training substantially increased FCH's risk of noncompliance with the FCRA or that FCH was aware of any such increased risk.[7]

At the hearing on June 8, 2023, and in previous filings, Plaintiff cited various letters sent to the Court by a principal of FCH, *see* ECF 18-1; ECF 25-1, and argued that these letters serve as

---

[6] Plaintiff cites one case in which FCH was sued in 2018 for violating the FCRA and default judgment was entered against it under the misnomer Fidelity Information Corp. ECF 30 at 10 (citing *Davis v. Fid. Info. Corp.*, No. 4:18-CV-00441-AGF, 2019 WL 1643340 (E.D. Mo. Apr. 16, 2019)). In *Davis*, the court "awarded $500 in statutory damages, $5,000 in actual damages, and attorney's fees and costs totaling $11,690." 2019 WL 1643340, at *1. There was no award for punitive damages nor any finding that FCH's violation was willful or reckless. A sole prior lawsuit against FCH for FCRA violations is inadequate to show that its conduct in the instant case was willful or reckless or that an award of punitive damages is warranted in this case.

[7] Plaintiff has presented information to suggest that FCH is in sound financial condition. This information would be relevant to determining an appropriate amount of punitive damages to award if such an award was justified in this case under 15 U.S.C. § 1681n(a)(2). But FCH's financial condition has no bearing on whether the company's violation of the FCRA was either knowing or reckless in this case, which is required to award any amount of punitive damages.

evidence of FCH's failure to take this lawsuit seriously and support Plaintiff's claim for punitive damages. The undersigned disagrees and finds no substantial evidentiary value in these letters apart from confirmation that FCH is aware of the lawsuit and has elected not to appear or participate due to the costs of litigation. The letters do not support an inference that FCH's violations of its obligations under the FCRA were willful or reckless.

In sum, Plaintiff has failed to present evidence that FCH's noncompliance with the FCRA was more than negligent. For these reasons, the undersigned recommends that no punitive damages be awarded in this case.[8]

## V.    CONCLUSION

In sum, the undersigned recommends the following:

1.      Grant the Renewed Motion for Judgment by Default; and

2.      Enter default judgment against defendant Fidelity Capital Holdings, Inc. d/b/a Fidelity Creditor Service, Inc. on all counts of the Amended Complaint;

3.      Award plaintiff Bre-Ana Garland a total amount of $112,941.79 in actual damages, consisting of $12,941.79 in economic damages and $100,000.00 in non-economic damages.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and L.R. 301.5(b).

_____/S/_____
Date: July 6, 2023.                            Matthew J. Maddox
                                               United States Magistrate Judge

_____

[8] Even if there was evidence that FCH's FCRA violations were willful in this case and an award of punitive damages was therefore justified, the undersigned's recommended award of $112,941.79 for actual damages would satisfy the purposes of retribution and deterrence served in a punitive damages award.